## BORROWE a. MILBANK.

*New York Superior Court ; General Term, April,* 1857.

ENCUMBRANCE.—AWARD.—VALIDITY OF.—COMPLAINT.

A lot of land, subject to a lease containing a covenant of renewal, at a rent to be agreed upon by the parties or fixed by arbitration, is not an "unencumbered" lot; and when sold to the tenant holding the covenant, such lot cannot be deemed to have been sold as an "unencumbered" lot.

To state, in a pleading, the nature and source of the information upon which the party relies in making an averment of facts on information and belief, does not vitiate an independent averment of such facts.

Nor does it detract from the force of such averment, that the clause of the pleading in which it occurs, refers—*e. g.,* by the use of the word "therefore,"—to the antecedent clauses, in which the grounds of the information and belief are stated.

In an action brought to set aside an award of an umpire, to whom it was submitted "to value a lot of land at its full and fair worth at private sale, considering the same as an unencumbered lot," charged that his valuation "was not made upon considering the same as an unencumbered lot, but * * * at a less value, and such valuation was without his powers as umpire."

*Held,* upon demurrer, that the complaint sufficiently showed that the umpire had exceeded his authority.

When an arbitrator or umpire exceeds his authority, the effect of his act to avoid his award is the same, whether the error was committed consciously or through mistake.

Appeal from an order overruling a demurrer to the plaintiff's complaint.

This action was brought by Jacob H. Borrowe and Jane, his wife, against Mary W. Milbank.

The complaint averred the following facts:—

The plaintiffs, in right of the wife, were seized in fee of lot number 738 on map of the Rutgers estate, on the northerly side of Madison-street, subject to a lease, dated May 20, 1835, by the executors, &c., of Henry Rutgers, deceased, to Calvin Condit, for twenty years from May 1, 1835, at an annual rent of $110, expiring on May 1, 1855, which lease, by mesne assignments, had become vested in defendant.

The lease contained a covenant of renewal for a further term of twenty-one years, at such annual rent as should be agreed on, &c., but the lease contained a provision that, in case of the par-

ties not agreeing, each party should choose a disinterested person to ascertain the same; "which persons shall, in making their award or determination in the premises, under oath, appraise and *value the said lot demised, at its full and fair worth, at private sale, considering the same as an unencumbered vacant lot;* and five per cent. on the amount of their said appraisement or valuation shall be the annual rent of the said lot for such further term."

In case of disagreement of the arbitrators, they were to choose an umpire, "whose decision, under oath, shall fix and determine the same, and five per cent. on the amount of the appraised value shall be the annual rent for the further term."

The parties being unable to agree on the rent for the renewal term, chose arbitrators, who, being also unable to agree, chose Samuel N. Dodge umpire, to fix the value according to the covenant in the lease.

This umpire, being duly sworn, made his valuation of "*the value, pursuant to the terms of the lease,*" at twenty-eight hundred dollars, on March 15, 1856.

On the same day he sent to the agent of the plaintiffs the following letter:

NEW YORK, March 15, 1856.

JOHN P. CROSBY, Esq.

DEAR SIR: Agreeably to my understanding with you, I would notify you that I have fixed the value of the lot in question at 2,800 dollars.

Basing my judgment solely on the sale which was in evidence before me, of the lot number 735, and therefore not involving any principle discussed between us.

Yours, &c.,      S. N. DODGE.

The complaint further showed that the lot number 735, mentioned in the foregoing letter, was sold to a person holding an unexpired lease thereof, which lease contained a covenant for the positive renewal thereof, on the same terms as were contained in the lease set forth in the complaint.

After stating the foregoing facts, the complaint contained the following clause: "The plaintiffs *therefore charge* that the said appraisal and valuation, as aforesaid, made by the said Samuel

N. Dodge, was not made on considering the same as an unencumbered vacant lot, but contrary to the covenant of renewal, &c., and at a less value, and such valuation was without his powers as such umpire."

The defendant demurred to this complaint. The demurrer was overruled at special term, the following opinion being rendered.

HOFFMAN, J.—The case made by the complaint is, that the arbitrator deviated from the rule prescribed to him, and by which he was to be governed. It was submitted to him to appraise the lot, upon the basis of its being unencumbered. He has done so, by adopting the sale price of a lot which was encumbered.

I do not think it can be questioned that the phrase "unencumbered," used in the covenant of renewal, means exempt from all liens, charges, and provisions, which tend to diminish the value of the lot. I cannot doubt that a lot under an unexpired lease, at a particular rent, is encumbered. The inquiry as to the comparative rent when the lease was granted, and at the present time, ought not to be entered into. The present case is even stronger, when the sale adopted as the standard was to the lessee himself, in possession under his unexpired term.

With respect to the letter of the umpire, it may be doubted whether it can be used as evidence (Lezzo v. Young, 32 *Eng. L. & Eq. R.*, 433.) But the letter has enabled the plaintiff to state, on information and belief, the fact that his appraisement was made on a principle, or by a standard which was, in truth, prohibited by the submission. I think the complaint may justly be treated as making an allegation of this fact. The word *therefore* does not prevent this conclusion. Whether the plaintiff can prove his averment is a different question.

The point, then, simply is, whether the plaintiff can go out of the award, which is unexceptionable on its face, to prove the fact alleged.

I have examined the cases cited on the argument (Butler v. The Mayor, &c., of New York, 7 *Hill*, 329, and 1 *Hill*, 325; In the matter of Williams, 4 *Den.*, 194), as well as some others, and I think parol evidence is admissible upon this subject.

The case in 7 Hill's Reports settled the rule, that parol evi-

dence was admissible, to show that arbitrators exceeded their jurisdiction, or passed upon matters not submitted to them—to show that there was no award within the submission.

In the case of Williams (4 *Den.*, 199), Chief-Justice Bronson speaks of this case as deciding that the parties may go behind the award for the purpose of impeaching it; and if that may be done in an action, it is equally clear it may be done on a motion. In Williams' case the award was unobjectionable on its face, and it was shown by affidavits that the arbitrators had passed upon a subject-matter not within the submission.

In Peterson *v.* Aigre (30 *Eng. L. & Eq. R.*, 535), the objection to an award was, that it was signed by the two arbitrators at different times, although in the same place. It was held not to be the joint judgment of the two, and was sent back. The fact was proven by affidavit. So in Wade *v.* Dowling (4 *Ellis & B.*, 44; 28 *Eng. L. & Eq. R.*, 104), Coleridge, Justice, says: "One fundamental principle is, that the courts are bound to give to the parties what they stipulate for as the condition of their submission. It is well pointed out in Stalworth *v.* Junes, that up to the last moment something may occur to change the opinion of the arbitrator. The parties have a right to the joint judgment of the two, exercised upon consideration up to the last moment. No principle was better established than this, that where, by comparing the award with the submission, it could be seen that the arbitrator had disregarded limitations to his authority incorporated in the submission, the award was bad (M'Cormick *v.* Gray, 13 *Howard's U. S. R.*, 36).

It appears to me that the principle upon which the relaxation of the former rule has been permitted, sustains the present complaint. It is not a question of interfering with the judgment of the arbitrator, with his adoption of false or erroneous elements of appreciation of property, the valuation of which has been left to him. It is his neglect or violation of the rule given to him as his guide; indeed, as the condition of the submission, and the limitation of his power. The case of Duke *v.* James (4 *Comst.*, 573), relied upon by the counsel of the defendant, does not appear to me to exclude the parol testimony to this point.

I do not find it necessary to notice the question whether

the arbitrator can be examined as a witness. (See Duke *v.*
James, *supra*, and cases there cited; Brophy *v.* Holmes, 2
*Moll.*, 1.)

Judgment for the plaintiff on the demurrer with costs, with
liberty to answer in twenty days.

From the order directing judgment for the plaintiff, the de-
fendant now appealed.

*M. S. Bidwell*, for the appellant.—I. The appraisement men-
tioned in the complaint was an award, and subject to the same
rules of law as other awards (Underhill *v.* Van Cortlandt, 17
*Johns.*, 405).

II. There is no averment that the umpire exceeded his powers,
or that he or the defendant was guilty of partiality, corruption,
or other misconduct (Smith *v.* Cutler, 10 *Wend.*, 589).

III. The umpire had exclusive jurisdiction of the matters sub-
mitted : his award is final, and not subject to appeal to, or re-
vision by, any court of law or equity.   1. The submission was
not made subject to any such appeal or revision (Kleine *v.*
Catara, 2 *Gallis.*, 61, 69, 70).   2. All questions of law, as well
as of fact, were left to the umpire.   It was for him to determine
what evidence was admissible, or pertinent, or sufficient; it was
not necessary that he should be governed by the rules of evi-
dence adopted in courts.   His determination was to depend on
such considerations as satisfied his conscience and judgment.
His award cannot be set aside or questioned on the ground that
it was erroneous in fact or in law (Emmett *v.* Hoyt, 17 *Wend.*,
410).   He was sole judge of law and of fact; and if he acted
honestly, his decision is final.   (Kleine *v.* Catara, 1 *Gallis.*, 61,
69, 70 ; Underhill *v.* Van Cortlandt, 2 *Johns. Ch. R.*, 339, 361 ;
Todd *v.* Barlow, *Ib.*, 551 ; Cranston *v.* Kenny, 9 *Johns.*, 212 ;
Campbell *v.* Western, 3 *Paige*, 124, 138 ; Jackson *v.* Ambler,
14 *Johns.*, 103 ; Smith *v.* Cutler, 10 *Wend.*, 589 ; McKinney *v.*
Newcomb, 5 *Cow.*, 425 ; Viele *v.* Troy & Boston Railroad Com-
pany, 21 *Barb.*, 382 ; Tupp *v.* Grayson, 1 *Crompt. M. & R.*, 523 ;
Ashton *v.* Poynter, 3 *Dowl. Pr. R.*, 201 ; Armstrong *v.* Marshall,
*Ib.*, 593 ; Syms *v.* Goodfellow, 2 *Bing. N. C.*, 532 ; Campbell *v.*
Twimlow, 1 *Price*, 81.)   3. It was for him to determine what
was an encumbrance within the meaning of the submission.

Therefore, if he was mistaken as to the fact or the law in this respect, his judgment is nevertheless final and conclusive. 4. And so, too, if he was mistaken in admitting evidence of the sale or the value of a neighboring lot, whether encumbered or not; or if he was mistaken as to the fact of its not being encumbered; or if he was mistaken in basing his judgment solely, or in part, upon a sale of such lot; or if he was mistaken in receiving any other evidence; or based his judgment on erroneous principles : yet his judgment is final, and cannot be reversed or questioned in this court.

IV. But the complaint contains no averment that he did not determine the value of the lot as an unencumbered vacant lot. The allegation is, that he wrote a letter to John P. Crosby, Esq., which contained certain statements. 1. This letter was a private *ex parte* statement to an attorney of one of the parties, which could have been suppressed or concealed at his pleasure (*Russell on Arbitra.*, 447, 448 ; 47 *Law Lib.*, *N. S.*). And it appears to have been written *after* he had made his award, and when, consequently, he had ceased to be an umpire, and had no kind of authority to bind the defendant (Duke *v.* James, 4 *Comst.*, 576 ; Underhill *v.* Van Cortlandt, 2 *Johns. Ch. R.*, 339). It was written, moreover, in pursuance of a previous, and (so far as appears) a secret understanding between him and Mr. Crosby. 2. This letter contained a statement that he had *based* his judgment solely on the sale which was in evidence before him of the lot number 735. Such a statement in a letter of the umpire is not an allegation of the plaintiffs of the fact that he *had* so based his judgment on that sale. It is not even evidence of that fact. It would not, indeed, be competent for the umpire himself to testify to it. (Newland *v.* Douglass, 2 *Johns.*, 62 ; Campbell *v.* Western, 3 *Paige*, 124, 138 ; French *v.* New, 20 *Barb.*, 481, 493 ; 3 *Atkyns*, 644.) 3. It is, to be sure, added in the complaint (page 7), that "The plaintiffs, therefore" (that is, *for this reason*), "*charge* that the appraisal was not made upon considering this as an unencumbered vacant lot." This is not an *allegation* that the appraised value was not made upon considering this lot as unencumbered and vacant, but it is a mere *inference* deduced from previous statements (Lawrence *v.* Wright, 2 *Duer*, 673). And if it is doubtful whether it is an allegation or an inference, the court will adopt the construc-

tion most unfavorable to the pleader (M'Elwain v. Willis, 9 *Wend.*, 563; Ridder v. Whitlocke, 12 *How. Pr. R.*, 208, 212).

V. It should be observed, in regard to this statement in the umpire's letter:—1. That it appears that evidence was given before him of the value of the lot. 2. That it is not pretended that any objection was made by the plaintiffs to the umpire's receiving such evidence, or to his taking it into consideration in determining the question submitted to him. 3. It was not improper for him to base his judgment on the sale of an encumbered lot in the neighborhood (Underhill v. Van Cortlandt, 17 *Johns.*, 405), or to *base* it solely upon that fact (21 *Barb.*, 397). It does not appear that there was any other fact proved before him upon which he could base it. It does not follow that he did not make a just discrimination between the value of the two lots. All he did was to base his *judgment* on that fact—the determination was the result of the legitimate exercise of his own *judgment* (Emery v. Wase, 5 *Ves.*, 848). 4. It does not appear that the umpire knew that there was a lease of the lot number 738, or that it was sold to a person holding such a lease. 5. A lease is not an encumbrance on land; it is an estate or interest in the land—it is essentially different in this respect from a mortgage, judgment, charge, right of dower, &c.

VI. But if there had been a positive allegation that the appraisal was not made upon considering the lot as unencumbered and vacant, and contrary to the covenant of renewal, and at a less value; still, this action could not be maintainable—such an averment would be equivalent to an allegation that the decision of the umpire was erroneous in law or in fact; it would amount to nothing more than that the umpire, in effect, says that he has valued the lot as an unencumbered vacant lot. The complaint alleges that he has not so valued it, and makes this the foundation of a claim for relief to dispute the very point decided by the umpire. If an action could be sustained on this ground, then an action might be maintained to set aside any award, on the averment that the arbitrator had decided erroneously, and thus the decision of an arbitrator could be examined and reviewed by a court in all cases, and the question decided by the arbitrator be always heard over again. If this doctrine can be sustained, an arbitration is a mere mockery, or something worse;

expensive and useless at the best, and affording opportunities for injustice and abuse.

VII. If the award was void, there was no cause for this action; it was unnecessary and vexatious. The plaintiffs could treat the award as a nullity, if set up in any court of law or equity (Butler *v.* The Mayor, &c., of New York, 7 *Hill*, 329).

VIII. The order appealed from was erroneous in not defining the judgment which was to be given for the plaintiffs. 1. This court could, at the utmost, do nothing more than set aside the award. The *submission* to the umpire was *valid*, and if no legal award has been made, it remains in full force, and is binding ,upon both parties. No *time* for making the award is prescribed. If the award should be set aside, the same umpire can go on and make his award. He can still execute his duty, and this court has no jurisdiction to set aside the submission to him; there being no charge against him of fraud, corruption, or other misconduct. 2. If the submission has become, for any reason, void or ineffectual, this court has no jurisdiction to appoint appraisers, or to decide the question which it was intended should be determined by such appraisers. (Blumdell *v.* Bretargh, 17 *Ves.*, 242; *Watson on Arbitrators*, 386, 387; 43 *Law Lib.*, *N. S.*; *Batten on Cont.*, 167, 212; 51 *Law Lib.*, *N. S.*; Cooth *v.* Jackson, 6 *Ves.*, 34; Milnes *v.* Grey, 14 *Ves.*, 400; Agar *v.* Macklaw, 2 *Sim. & S.*, 418.) It never was intended that such appraisers should be governed by the legal rules of evidence, or any other rules of law; but that they should be governed by such considerations as satisfied their own consciences. The order appealed from was therefore void, in ordering judgment to be entered for the plaintiff, without restraining it to a judgment merely that the award should be set aside.

*Daniel Lord*, for the respondents.—I. If the valuation of the umpire had stated on its face the facts admitted by the demurrer, it would have been void upon its face, as being without the submission. Those facts are: *First*, that the valuation was founded on the sale of a lot, under a positive covenant of renewal for twenty-one years, at a rent of five per cent. on its valuation at the time; and, *second*, that this value was less than the value of the lot considered as unencumbered. 1. The covenant containing the rule of submission was not an unlimited authority to

value, but was limited to value on a certain rule. If the umpire's decision had expressed the valuation to have been made on the price of a lot encumbered by a dower and subject to dower, it would clearly have been void, as without the power, without the submission, and because the rule prescribed to this power had not been applied. Although errors of judgment in the application of the rule set down in the submission may not avoid a valuation, yet where the rule has not been adopted at all, the valuation is void, as not made under the authority. The submission in the covenant for renewal, is a rule of property carefully guarded by a restriction; it is not a loose and general submission, for the umpire to value on any rule he may think fit to adopt. To hold that a determination on a rule different from that of the submission shall be binding, is to nullify the submission so far as it restricts the power of the umpire.

2. A lot, subject to a term of twenty-one years, at a fixed rent of — per cent. on a present valuation, is not an unencumbered lot within the meaning of the covenant. And it is averred that the value, subject to such a term, is less than the value of the lot as unencumbered. The valuation of two exactly similar lots, one not subject to increase of rent for twenty-one years, the other free to receive any increase which might arise during twenty years, could not be the same. But even if they were otherwise the same, a restriction of rent to five per cent. for twenty-one years on the one, and the absence of any restriction on the other, would create a material difference in value. The averment that the value of the lot forming the umpire's rule was less than if free of encumbrance, is not denied. The covenant to renew for twenty-one years is a covenant running with the land; is a covenant capable of specific execution against the land and its owner, and is an encumbrance, in fact and in law, and clearly within the meaning of the covenant.

II. That an award is made under a deviation from, or exceeding the rule or range of the submission, may be shown by evidence *dehors* the award. (Butler *v.* The Mayor, &c., of New York, 7 *Hill,* 329, overruling S. C., 1 *Hill,* 325; Matter of Williams, 4 *Den.,* 194.) In this case, the facts showing the departure from the submission are admitted. The departing from the submission is a misconduct of the umpire, against which equity would always give relief.

III. The award being valid on its face, and the lessee having a right to specific execution on his part, the reversioner, from the mutuality of remedy in equity, is entitled to have it annulled (Philips v. Burger, 8 *Barb.*, 528, and cases cited). Whether the court will decree a valuation by a referee, is not now under consideration; no order on that subject has been made. But it will be claimed by the plaintiffs that the court, having the subject rightly before it, will not subject the parties to a new decision by an umpire, but will give full and complete relief, by causing a legal valuation under its own order.

OAKLEY, CH. J., announced, orally, the decision of the court,* and stated the substance of the grounds of its judgment, in conformity with the reasons assigned in an opinion which had been prepared by Mr. Justice Bosworth, to which counsel were referred, as presenting more fully the views and conclusions of the court.

BOSWORTH, J.—If the allegations of the complaint make a case, establishing the fact that the umpire applied a rule of valuation different from that which the terms of his authority prescribed, his award should be set aside.

To value the property by a different rule from that which the terms of the authority required the umpire to apply, and to estimate the value by a rule on which he had no authority to act, is as much a departure from the matters submitted, as to pass upon a matter not submitted, or to omit to consider a matter which was to be considered and covered by his decision. (Butler v. The Mayor, &c., 7 *Hill*, 329; Williams v. Goodrich, 4 *Den.*, 194.) The complaint shows, that the umpire was required, by the terms of his authority, to value the lot " at its full and fair worth at private sale, considering the same as an unencumbered vacant lot."

He valued the lot at $2,800. The complaint charges, on information derived from the umpire, that he based his judgment " solely on the sale * * of lot No. 735." That was a contiguous lot. This statement is fairly open to the construction, that he valued the lot in question solely with reference to the price at

---

* Present, Oakley, Ch. J., and Duer, Bosworth, Slosson, and Woodruff, JJ.

which No. 735 had been sold, which price was proved before him. That the lots being contiguous, he considered them, as substantially, of equivalent value, and took the price at which the one was sold, as the value of the other.

The complaint then avers, that lot No. 735 was sold to a person holding the unexpired term of a lease thereof, containing a covenant for the renewal thereof, upon the same terms and conditions as are contained in the lease in question.

Assuming this to be true, lot No. 735 was not sold as an unencumbered lot, and the price at which it was sold was not the value of the lot as unencumbered. By taking the price of lot No. 735, and basing his judgment of the value of lot No. 738 "solely on the sale * * of the lot No. 735," and applying the price of the latter as the measure of the value of the former, the umpire exceeded his authority.

"The plaintiffs therefore charge, that said appraisal and valuation as aforesaid, made by the said Samuel N. Dodge, was not made upon considering the same as an unencumbered vacant lot, but contrary to the covenant of renewal hereinbefore recited, and at a less value, and such valuation was without his powers as such umpire."

Striking out the word "therefore," the allegation is sufficiently specific to admit proof, that lot No. 738, instead of being valued as a vacant and unencumbered lot, was valued by a rule which fixed to it a valuation less than the specified rule required, and less than the umpire would have found, if he had acted on the rule by which the authority required him to be controlled.

The word "therefore," in the position it occupies, does not detract from the force of the allegations of the complaint, of which it forms a part.

The information which is previously stated is sufficient, in the matter of pleading, to justify the plaintiffs in stating in their complaint, upon information and belief, that the umpire applied the rule of valuation which the complaint alleges he did apply. If the nature and source of the information had not been disclosed, the complaint, in this respect, would have been unobjectionable. Stating the nature and source of the information does not vitiate it.

Although it be true that the letter of the umpire may justify

the plaintiffs, as a matter of pleading, in stating upon information and belief that the facts are as the letter asserts, we must not be understood to intimate that, upon such facts being put at issue, the letter would be competent evidence, upon the trial, to establish the truth of such alleged facts.

It is true that the letter is not so precise as necessarily to exclude the conclusions that the umpire may have known that No. 735 was encumbered, and that he made an allowance on that account, in weighing as evidence, the price at which it was sold.

But looking at the letter of the umpire, and the averments which followed, we think the plaintiff might, with propriety, make the "charge" or allegation in his complaint, that "said appraisal and valuation, as aforesaid made by the said Samuel N. Dodge, was not made upon considering the same as an unencumbered lot, but contrary to the covenant of renewal hereinbefore recited, and at a less value, and such valuation was without his power as such umpire."

The demurrer, by admitting the material allegations of the complaint to be true, admits that fact, and thus it is established by the pleadings as they stand, that the umpire exceeded his authority.

When an umpire or arbitrator exceeds his authority the effect of his act is the same, whether it was done consciously or by mistake.

When an arbitrator passes upon matters not submitted, or transcends his powers in disposing of those which are submitted, his award is void, because he has transcended his powers. Whether he did so through ignorance or design, it is unimportant to inquire.

The order appealed from must be affirmed.