Matter of Lanigan v Simeon R. (2005 NY Slip Op 50810(U))

[*1]

Matter of Lanigan v Simeon R.

2005 NY Slip Op 50810(U)

Decided on May 31, 2005

Family Court, Oswego County

Roman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 31, 2005

Family Court, Oswego County
In the Matter of a Proceeding for Support under Article 4 of the Family Court Act Frances . Lanigan, Commissioner of Social Services o/b/o Jessica R., Petitioner,
against
Simeon R., Respondent.
xxx

David J. Roman, J.
On April 11, 2005, the Department filed specific written Objections to order of Support Magistrate James L. Gorman, by and through Graham B. Seiter, Esq., associate counsel for the Legal Division. The Court has not received any Rebuttal from Respondent.
The matter was commenced upon the filing of a petition for support against the above named Respondent, on February 3, 2005. The Department sought a modification of an existing child support order, entered June 21, 2001, by reason of a change of circumstances, to wit: "Tyler R. DOB xx-xx-xxxx SSNo. UNKNOWN, WAS ADDED TO THE PUBLIC ASSISTANCE CASE 12/27/04. HIS NEEDS TOTAL $214.50 PER MONTH AND MEDICAID." The existing order required Mr. R. to pay $60.00 per week as current care support for Kimberly R. (dob 02-19-1998).
These matters came on to be heard for an initial appearance on March 18, 2005. The Commissioner appeared through the DSS Legal Division, Graham B. Seiter, Esq., of counsel, and the Respondent appeared pro se. The support assignor, Jessica R., was also present, as well as a representative of the Child Support Collection Unit. The Support Magistrate recites that the Court entered this order after findings. Under the terms of the order, Mr. R. is required to pay $75.00 per week as support for the parties' child, Kimberly. Said order also includes a decretal [*2]paragraph denying child support for Tyler, "as the parties agree that the Respondent is not the biological father of said child and Jessica R. admits to the child's conception by artificial means." The Department has filed these Objections only as to the latter finding.
In the Objection, counsel for the Department argues that it was error to deny child support for Tyler because, despite the fact that Ms. R. acknowledged that conception took place through artificial means, under the law, Tyler is presumed to be the legitimate child of the parties' marriage. Therefore, the Department requests that the Court amend the support order to require Mr. R. to pay additional support for Tyler, or in the alternative, to direct the parties to undergo paternity testing, the cost of which the Department would offer to pay in the first instance, subject to reimbursement if it is determined that Respondent is the natural father.
As a general rule, the findings of a support magistrate "should not be rejected unless they are contrary to the weight of the credible evidence or in error as a matter of law." See Matter of Weiner v. Weiner, 97 Misc 2d 920 (Monroe Co. Family Ct. 1979). The greatest deference should be given to the factual findings of a support magistrate who is in the best position to assess the credibility of the witnesses and the evidence proffered (see Matter of Niagara County DSS v. Randy M., 206 AD2d 878 (4th Dept. 1994); Matter of McCarthy v. Braiman, 125 AD2d 572 (2nd Dept. 1986)). 
The Court, through its Confidential Law Assistant, Thomas Benedetto, Esq., reviewed the electronic recording of the proceedings held on March 18, 2005. Inasmuch as this was only scheduled for an initial appearance, Mr. Gorman advised Respondent of his right to counsel, and stated that it was his intention to perform some preliminary calculations under the Child Support Standards Act ("CSSA") based upon Mr. R.'s income, but that an adjournment would be granted in the event he requested time to hire an attorney. Mr. Gorman reviewed Mr. R.'s earnings with him, and performed the CSSA calculations for the two children. A colloquy was then had in regard to the paternity of Tyler. Mr. R. stated that he was not the father of the child, who was conceived through in vitro fertilization. Ms. R. confirmed such statement. The Support Magistrate advised the parties that even though Respondent might not be the child's natural father, as Ms. R.'s lawful spouse, he may still be held legally liable for child support (under § 415 of the Family Court Act) as a step-parent. However, Mr. Gorman then held that he would not consider affirmative findings on behalf of Tyler against Mr. R. until such time as the Department first made an attempt to seek child support from the natural father, presumably a third party who was not identified in these proceedings.
The record confirms that the order in this case was entered based upon consent of Mr. and Mrs. R., and the Department, not findings at the conclusion of a full hearing as one might conclude from a reading of the written order. Stipulations of settlement are favored by the courts and are not to be lightly set aside (see Hallock v. State of New York, 64 NY2d 224, 230; Sontag v. Sontag, 114 AD2d 892; Harrington v. Harrington, 103 AD2d 356). In order to set aside an oral stipulation once approved by the court, a party must demonstrate, upon proper papers, one of the traditional grounds for vacature, e.g., fraud, duress, mistake or overreaching.
[*3]
The terms of the final order are consistent with the agreement as placed on the record by Mr. Gorman, and Department counsel did not voice any objection to the terms thereof during the proceeding. Therefore, it cannot be said that the resultant agreement was the product of fraud, duress, mistake of fact, or overreaching, and, thus, will not be set aside upon such grounds.
The Court also examined whether the subject agreement must be vacated as a matter of law by reason that the Support Magistrate erred in his determination that the subject child, conceived by artificial means, was not Respondent's biological child. The Court finds that Support Magistrate Gorman did err in two respects which will be discussed more fully below.
An inquiry should have been conducted in regard to the artificial insemination, and whether the presumption of legitimacy would apply. The Department requests that this Court set such finding aside based upon the said presumption, citing §175 of the Domestic Relations Law. However, their reliance upon such provision is misplaced inasmuch as these are not divorce proceedings. The applicable presumption of legitimacy is found in § 24 of the Domestic Relations Law. Said provision supports a finding of legitimacy where a child is born during a time when parties are lawfully married. However, §73 of the Domestic Relations Law, entitled "Legitimacy of children born by artificial insemination" may prove more relevant in these proceedings. Said provision provides that "[a]ny child born to a married women by means of artificial insemination performed by person(s) duly authorized to practice medicine and with the consent in writing of the women and her husband, shall be deemed the legitimate, natural child of the husband and his wife for all purposes."
In reviewing the record, the Court is unable to make Findings as to which if either of the presumptions are applicable because the record is incomplete. Mr. R. stated that the conception was by "in vitro" fertilization. Such verbiage is a medical term of art, but it is unclear whether in fact Ms. R. was under medical care, or became pregnant through alternative means. A hearing will be required to determine whether the artificial insemination was performed by licensed medical personnel and, if so, whether Mr. R. executed a written consent thereto, as is required under the law. In the event the pregnancy was not the result of a medical procedure, the Department will be required to develop the record accordingly as to the general presumption of legitimacy and whether Mr. R. has sufficiently rebutted such presumption to entitle him to a paternity test. Accordingly, the Objection is being granted and the matter remanded for further consideration upon these issues.
The second perceived error in these proceedings is the declaratory determination that Mr. Gorman placed on the record during the appearance regarding the possibility that Mr. R. might be determined in a later proceeding to be legally responsible for child support as a step-parent, even though he may not be the biological father. Should Mr. R. meet his burden of proof to overcome the presumption of legitimacy, and otherwise be excluded as the natural father, he would have no such support liability as a step-parent. A party becomes a step-parent by operation of law upon the marriage to a party who already has a child(ren). Such is not the case here. However, since the final order did not contain affirmative findings on this issue, the point is somewhat academic.
Accordingly, and for the reasons set forth herein, it is hereby,
ORDERED, that the Objection is hereby GRANTED upon the ground(s) as set forth herein above; and it is further,
ORDERED, that these proceedings are hereby REMANDED to the Support Magistrate for further proceedings in accordance with this decision; and it is further
ORDERED, that the provision denying child support for the subject child, Tyler, is hereby deleted, subject to any further determinations of the Support Magistrate; and it is further,
ORDERED, that, pending further proceedings, the remainder of the terms of the order of support, entered on April 7, 2005, shall remain in place as a temporary order of the Court, and be
subject to any further determinations of the Support Magistrate.
ENTER:
May 31, 2005
at Oswego, New York______________________________
Hon. David J. Roman
Judge of the Family Court
NOTICE:

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL MUST BE TAKEN WITHIN THIRTY DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, THIRTY-FIVE DAYS FROM THE MAILING OF THE ORDER TO THE APPELLANT BY THE CLERK OF THE COURT, OR THIRTY DAYS AFTER SERVICE BY A PARTY OR LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS EARLIEST.
AN ORDER OF CHILD SUPPORT SHALL BE ADJUSTED BY THE APPLICATION OF A COST OF LIVING ADJUSTMENT AT THE DIRECTION OF THE SUPPORT COLLECTION UNIT NO EARLIER THAN TWENTY-FOUR MONTHS AFTER THIS ORDER IS ISSUED, LAST MODIFIED OR LAST ADJUSTED, UPON THE REQUEST OF ANY PARTY TO THE ORDER OR PURSUANT TO PARAGRAPH ( 2) BELOW. UPON APPLICATION OF A COST OF LIVING ADJUSTMENT AT THE DIRECTION OF THE SUPPORT COLLECTION UNIT, AN ADJUSTED ORDER SHALL BE SENT TO THE PARTIES WHO, IF THEY OBJECT TO THE COST OF LIVING ADJUSTMENT, SHALL HAVE THIRTY-FIVE (35) DAYS FROM THE DATE OF MAILING TO SUBMIT A WRITTEN OBJECTION TO THE COURT INDICATED ON SUCH ADJUSTED ORDER. [*4]UPON RECEIPT OF SUCH WRITTEN OBJECTION, THE COURT SHALL SCHEDULE A HEARING AT WHICH THE PARTIES MAY BE PRESENT TO OFFER EVIDENCE WHICH THE COURT WILL CONSIDER IN ADJUSTING THE CHILD SUPPORT ORDER IN ACCORDANCE WITH THE CHILD SUPPORT STANDARDS ACT.
ADDITIONAL NOTICE:

A RECIPIENT OF FAMILY ASSISTANCE SHALL HAVE THE CHILD SUPPORT ORDER REVIEWED AND ADJUSTED AT THE DIRECTION OF THE SUPPORT COLLECTION UNIT NO EARLIER THAN TWENTY-FOUR MONTHS AFTER SUCH ORDER IS ISSUED, LAST MODIFIED OR LAST ADJUSTED WITHOUT FURTHER APPLICATION OF ANY PARTY. ALL PARTIES WILL RECEIVE NOTICE OF ADJUSTMENT FINDINGS.
WHERE ANY PARTY FAILS TO PROVIDE, AND UPDATE UPON ANY CHANGE, THE SUPPORT COLLECTION UNIT WITH A CURRENT ADDRESS TO WHICH AN ADJUSTED ORDER CAN BE SENT, AS REQUIRED BY SECTION 443 OF THE FAMILY COURT ACT, THE SUPPORT OBLIGATION AMOUNT CONTAINED THEREIN SHALL BECOME DUE AND OWING ON THE DATE THE FIRST PAYMENT IS DUE UNDER THE TERMS OF THE ORDER OF SUPPORT WHICH WAS REVIEWED AND ADJUSTED OCCURRING ON OR AFTER THE EFFECTIVE DATE OF THE ORDER, REGARDLESS OF WHETHER OR NOT THE PARTY HAS RECEIVED A COPY OF THE ADJUSTED ORDER.